I'm here today on behalf of Crowley Marine Services. I'd like to reserve five minutes for rebuttal. As the Court is aware, this case arises out of a collision between the Tanker Allegiance owned by Maritrans and the Tug Sea King on the evening of January 20, in 2000 and, excuse me, January 19, 2002. I'm assuming that the Court is familiar with the background facts, and unless you need additional information, I'll just move straight into our argument. We were having dinner with Judge McKeown last night just to get her debrief. That's not true. But, yes, we are familiar. Yes, the Court is. But we are familiar with it. The Court is well familiar with this, and as I pointed out to my co-counsel, it is close to Groundhog Day today. The parties tried this case to the district court in April 2004. At that time, the district court allocated 75 percent of the fault to Crowley and 25 percent of the fault to Maritrans. We appeal that judgment to this Court, which reversed and remanded, holding critically that the allegiance violated the overtaking rule of the international regulations for the prevention of collisions at Sierra de Colreggs. Under the application of those rules, that meant that the allegiance was the burdened or give-away vessel and that the Sea King was the privileged or stand-on vessel. The matter was remanded to the district court, which then changed the allocation of fault from a 75-25 split to a 70-30 split. I have just a factual or foundational question. Was Rule 17 argued in this case before it went back on remand? Rule 17 was argued in regard to Maritrans before it went back on remand. It was not argued in regard to Crowley. We argued that under Rule 13 that Maritrans had the obligation to stand on, and Rule 17 talks about the obligations of the – excuse me, had the obligation to give way. And Rule 17 would tell us what that obligation was, which was to take early action to avoid a collision. Rule 17 was applied to Crowley or applied to the Sea King only on remand. It was a new finding on remand that Crowley used. New finding or a new argument? I mean, the court didn't raise that on its own motion or did it? Judge Kuhnhauer raised Rule 17? Your Honor, I can't remember whether Maritrans raised that in its briefing or not. Well, here's my question, because the – there is a prior opinion that remands, and so to some extent there's a law of the case here. And I'm looking at the remand discussion in Judge McKeown's opinion. It says the blameworthiness of each party's conduct would ultimately depend not only on the rules that each party violated but on whether those violations actually caused the collision considering all the facts of the case, citing Pennsylvania and other cases. So there has to be an assessment of comparative fault must be based on all the facts of the case, not on a simple count of how many rules of navigation each vessel violated. Therefore, the district court should consider the prearranged escort plan along with all the other facts when it apportions fault. It may well be that the allegiance's violation of Rule 8E contributed relatively little to the eventual collision in relation to the Seaking's failure to adjust course in Captain Neckeroff's apparent loss of situational awareness. However, neither is there any basis for concluding on the other extreme that such considerations bypass the Kohlregs entirely. Now, if I'm this district judge getting this back, that's basically telling my special circumstances interpretations wrong, but I'm perfectly free to look at the rules, nothing's absolute, and then assess it in light including of what is being argued here, the notion that Seaking was, in fact, a primary cause, a principal cause of the collision. Now, are we bound by any part of that? Bound by any part of the prior opinion? Analysis that the table's been set, so we aren't just sitting here with a blank slate. We do have the prior panel having sort of created at least a process of analysis that the district court was to follow. That's right, and I agree. And the district court reached out, we believe, to Rule 17 to apply that to Crowley and to apply that to the Seaking and analyze the fault of the Seaking under that. And there is a question as to whether that exceeded the scope of the order on remand and whether the district court ---- The order's pretty broad. It's saying look at the total circumstance. I'm not ---- How can you be more broad than saying totality of circumstances? And, Your Honor, we certainly have not rested on that in arguing to the court in our briefing, and we don't rest ---- What law is there in the Ninth Circuit or in any of the other circuits, if we're as to whether a comparative fault evaluation has to be reviewed as a factual matter for whether it's clearly erroneous? The case law is generally, and I agree with opposing counsel on this, the case law is generally said that a comparative fault analysis is reviewed for clear error as opposed to review de novo. We believe, though, that even ---- either way you go, we believe that this case should be reversed. But we'd urge in this that there is a principle of law here that we believe is behind this, and this is an opportunity for the Court to announce a principle of law, which is that where you have two vessels, one privileged, one burdened, and the burdened vessel fails to give way to the privileged vessel, that in the absence of some extraordinary circumstances, at least 51 percent of the fault should be allocated to the burdened vessel under those circumstances. Has any circuit ever done that in a comparative fault case, said that a certain type of regulatory violation has to garner 51 percent? No, Your Honor. We have not found that. We have not found that addressed one way or the other, that this would be an issue of principle. How about a reliable transfer? Is there any language, you know, in the Supreme Court's decision that would go for or against that theory? The reliable transfer says, of course, that it's reviewed for comparative fault and does say that that is a factual determination. The Otell Investments case, which was cited in the briefing actually by Meritrans subsequently published, states there in analyzing the degree of fault that the reliable transfer case created in ambiguities whether the Court meant comparative degree of culpability or blameworthiness, that is, how extensively each ship departed from a proper standard of care or the comparative causative effect of each ship's conduct, that is, the extent to which each ship's culpable conduct contributed to causing the collision. In regard to that, we think that you look first at the culpability, that is, the fault, and then whether that fault contributed to it. If the fault doesn't contribute to a collision, then clearly it's not a fault that any fault can be allocated for. A fault in the air would not be or negligence in the air would not be something that would allow a fault to be allocated to it. Our argument is that we should look at what's happening on the water or on the road, as it were, to determine the fault. And in this case, if you look at what happens on the water, Allegiance is the giveaway vessel, the Seeking is the stand-on vessel, and the evidence was that up until the hard starboard turn by the Seeking that the vessels were gradually closing, and that was, in fact, the testimony of the Maritrains. Do you disagree with the district court that there was a violation of Rule 17 on the part of the Seeking? Yes, I do, because I don't know where the evidence is. Rule 17 requires first that you identify or that the privileged vessel, the overtaken vessel, be able to identify that action of the burdened vessel is not going to be sufficient to avoid the collision. And there was no evidence as to when the Seeking could have arrived at that conclusion. The evidence, by contrast, the evidence was that the Maritrains' crew were looking at the situation, they were seeing the vessels gradually closing together, and then there was a hard starboard turn by the Seeking across the bow of the Allegiance. And the district court concluded, based on the testimony of Maritrains' expert witness, that that hard starboard turn of the Seeking was caused by hydrodynamic interaction or suction between the Allegiance and the Seeking. And all cases are clear that the – that when you have the suction effect, then the fault should be allocated to the overtaking vessel rather than the overtaken vessel to see that. There was no testimony as to when the Seeking could have observed that the action of the Allegiance would not have been enough to avoid the collision. And did you put in any evidence that the Seeking couldn't comply with 17b, couldn't move out of the way when the collision was upon? Whose burden would that be? The burden first would be for Maritrains to show that it could observe it. And then I agree that the burden then would have been for Crowley to show that it couldn't take that effective action. And actually, that evidence was also presented by Maritrains' expert witness, Dr. Brown, whose tank testing of the models of the vessels showed that once the hydrodynamic interaction took effect, that then it would be impossible for the rudder of the Seeking to offset that. How about 17ai, the little i, which says you have to keep a course? And the district court did make a finding that Seeking didn't make the manual adjustments that would be necessary to make a course. It does state that. But the evidence was that the vessels had been on this escort for about 40 minutes or so prior to the collision, 40, 45 minutes prior to the collision. And within that time, when the Seeking was on a 58-degree crew reading, it had come off, come down from basically the left side of the traffic separation zone down a few hundred yards into the traffic separation zone over a distance of several miles. It was moving. It may not have been making good a course of 58 degrees, but the evidence from Maritrains' pilot in Helmsman in the findings of fact and conclusions of law was that for around 935 and for the next few minutes, the pilot in Helmsman aboard the tanker noticed that in addition to the fore and aft distance gradually decreasing between the tanker and the Seeking, the lateral distance of that tugboat,
judges: Fisher, Gould, Ikuta